IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CECELIA QUILLIN, an individual, | Case No. 3:25-cv-01810-JR |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| KOIN-TV, INC., a Delaware corporation; NEXSTAR BROADCASTING, INC., a Delaware corporation; THOMAS KEELER, an individual; and CASEY WAAGE, an individual, | |
| Defendants. | |

RUSSO, Magistrate Judge:

Plaintiff Cecelia Quillan moves to remand this case to state court pursuant to 28 U.S.C. § 1447. For the reasons set forth below, plaintiff's motion should be denied.

Page 1 – FINDINGS AND RECOMMENDATION

## BACKGROUND

In July 2016, defendant Nexstar Broadcasting, Inc. ("Nexstar") hired plaintiff "as a Digital Account Executive at its Grand Rapids, Michigan subsidiary, WOOD TV." Compl. ¶ 4 (doc. 1-1). In May 2019, plaintiff relocated to Portland, Oregon, and "continu[ed] working as a Digital Account Executive" for Nexstar. *Id.* at ¶ 5. Plaintiff ultimately began working under defendants Thomas Keeler and Casey Waage. *See, e.g.*, *id.* at ¶ 8. Plaintiff alleges that, beginning in October 2022, "defendants created a hostile work environment" that culminated with her May 2024 termination. *Id.* at ¶¶ 6-52.

On October 1, 2025, plaintiff initiated a lawsuit in Multnomah County Circuit Court against Nexstar, Keeler, Waage, and KOIN-TV, Inc. ("KOIN-TV") alleging employment discrimination and retaliation based on sex, whistleblower activities, disability, and the use of family leave. *See generally id.*; Notice of Removal (doc. 1). On October 3, 2025, Nexstar, "through its counsel, accepted service of the Summons and Complaint provided by Plaintiff's counsel on, respectively, October 2 and 1, 2025." Notice of Removal ¶ 2 (doc. 1). That same day, Nexstar removed plaintiff's complaint to this Court based on diversity jurisdiction. *Id.* at ¶¶ 7-11.

## STANDARDS

A defendant may remove an action filed in state court to federal court if there is diversity or federal question jurisdiction. 28 U.S.C. § 1441. Upon a motion by the plaintiff, a federal court may remand the action to state court for lack of subject matter jurisdiction. 28 U.S.C. § 1447(c); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010). The party opposing the motion for remand bears the burden of establishing jurisdiction exists. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921).

**DISCUSSION**

Plaintiff argues remand is warranted "because at the time of removal, in-state or 'forum' Defendants KOIN-TV, Inc., Casey Waage and Tom Keeler had been 'properly joined and served' under 28 U.S.C. § 1441(b)(2)." Pl.'s Mot. Remand 2 (doc. 11). In particular, plaintiff asserts: (1) Nexstar's "attempt at snap removal" was "defective . . . because the in-state defendants were properly served at the time of the removal," (2) "service on . . . Nexstar completed service upon KOIN-TV, a forum defendant," because "Nexstar owns and operates KOIN-TV" and "KOIN-TV is an assumed business name" of Nexstar, and (3) the joinder of KOIN-TV was not fraudulent. *Id.* at 3-4, 8-9, 12-13.

## I.      Preliminary Issues

Before reaching the substantive merits of plaintiff's motion, the Court must address two preliminary issues: Nexstar's corporate structure as it relates to KOIN-TV and when service occurred in regard to each defendant. That is, plaintiff's motion is premised on the assertion that, due to Nexstar and KOIN-TV's corporation relationship, service on Nexstar effectuated service on KOIN-TV.

### A.      Nexstar's Corporate Structure

In support of her assertion that Nexstar owns and operates KOIN-TV, plaintiff points to the fact that Nexstar's website identifies "KOIN" as part "of its list of 'owned or partner stations,'" and provides a link to KOIN.com where an "About Us" section includes the following language: "Nexstar owns and operates KOIN-TV." *Id.* at 8; Lewallen Decl. Ex. 6, at 2 (doc. 12); Lewallen Decl. Ex. 7, at 1 (doc. 12).

Plaintiff has apparently confused KOIN-TV, which is an inactive corporation, with the broadcast license "KOIN." As is explained by Nexstar, the Federal Communications Commission

("FCC") grants exclusive rights for television companies to broadcast content on specific frequencies, which they sell as broadcast licenses and label with distinguishable "call signs." Cusick Decl. ¶ 2 (doc. 21). "'KOIN' is a 'call sign' that the FCC has assigned to a broadcast license in the Portland, Oregon market." *Id.*

KOIN-TV's association with the broadcast license "KOIN" ended in 2001, when KOIN-TV's parent company Emmis merged KOIN-TV with another wholly owned subsidiary. Enright Decl. ¶¶ 3-5 (doc. 23). As a result, KOIN-TV ceased doing business in Oregon at that time. *Id.*; Enright Decl. Ex. 1, at 1  (doc. 23-1). "In 2006, Emmis sold the KOIN broadcast license." Enright Decl. ¶ 4 (doc. 23). Since that time, Emmis has not had any "affiliation with the operations of the television station KOIN," nor has it ever had "an ownership, parent-subsidiary, or any other affiliate relationship with Nexstar." *Id.* Rather, Nexstar purchased the KOIN broadcast license in 2017 as part of a corporate merger from a third-party. Cusick Decl. ¶¶ 4-5 (doc. 21).

In other words, Nexstar has established under penalty of perjury "that KOIN-TV, Inc., is not an entity that has ever been owned, operated by, or affiliated with Nexstar." *Id.* at ¶ 6. While Nexstar does have an owner/operator relationship with the broadcast license "KOIN," plaintiff has not named KOIN as a defendant in this action, nor has she, as discussed in greater detail below, effectuated service specifically on either KOIN-TV or KOIN. Enright Decl. ¶ 6 (doc. 23). Indeed, plaintiff had the opportunity to refute this evidence but failed to do so. *See generally* Second Lewallen Decl. (doc. 27); *see also* Pl.'s Reply to Mot. Remand 2 (doc. 26) (merely asserting "[d]efendants admit that KOIN-TV derives from a call sign with 'brand value' that [Nexstar] owns and uses to do business in Oregon" but not proffering any new argument or evidence related to Nexstar's corporate structure).

Page 4 – FINDINGS AND RECOMMENDATION

Regarding her corporate alter egos argument, plaintiff accurately denotes that the Court would first need to find that a degree of "unity of interest and ownership" between Nexstar and KOIN-TV, such that their separate personalities no longer exist. Pl.'s Mot. Remand 10 (doc. 11) (citing *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 591 (9th Cir. 1996)). Yet, as discussed herein, the record indicates that Nexstar and KOIN-TV do not have any type of business relationship, let alone one sufficient to satisfy this test. In fact, plaintiff's own evidence demonstrates that the broadcast license "KOIN" is discrete from KOIN-TV. Lewallen Decl. Ex. 10, at 1 (doc. 12). Additionally, plaintiff has not provided evidence that it would be fraudulent or unjust to disregard the separate identities of Nexstar and KOIN-TV.

In sum, Nexstar does not own and operate KOIN-TV, Nexstar and KOIN-TV are not corporate alter egos, and KOIN-TV is not an assumed business name of Nexstar.

**B.    Service**

It is undisputed that Nexstar was served on October 3, 2025. But, as is discussed above, the record does not demonstrate that KOIN-TV and Nexstar are corporate alter egos, KOIN-TV is an assumed business name of Nexstar, or Nexstar owns and operates KOIN-TV. As a result, the Court cannot conclude KOIN-TV was successfully served through issuance of the summons and complaint to Nexstar's counsel.

In regard to Waage and Keeler, plaintiff first asserts that, at the time of Nexstar's service, they were "still employed with [Nexstar] as a Vice President and General Manager and a Director of Sales, respectively," such that they are represented by Nexstar's counsel. Pl.'s Mot. Remand 4-5 (doc. 11). Yet, as Nexstar accurately observes, plaintiff has not provided any case law in support of this assertion and instead relies on Oregon State Bar ("OSB") Formal Opinion No. 2005-80. *Id.* at 5; Def.'s Resp. to Mot. Remand 13 (doc. 20).

Page 5 – FINDINGS AND RECOMMENDATION

Reliance on this source is misplaced given that the issue before the Court is whether service on a corporate-employer results in *de facto* service on managerial employees who are individually named in a complaint. OSB Formal Opinion No. 2005-80 does not address this issue but instead discusses Or. R. Prof'l Conduct 4.2 and the circumstances under which a plaintiff's lawyer may speak with a past or current employee of a corporate defendant. OSB Formal Op. 2005-80, https://www.osbar.org/_docs/ethics/2005-80.pdf. Rule 4.2 itself does not provide any information pertaining to service on managerial employees of a corporate defendant.

Moreover, plaintiff has not cited to, and the Court is not aware of any authority indicating that an OSB Formal Opinion, let alone OSB Formal Opinion No. 2005-08, can or should be relied on in this context. *Cf. Evraz Inc., N.A. v. Cont'l Ins. Co.*, 2013 WL 6174839, *6 (D. Or. Nov. 21, 2013), *recons. denied by* 2014 WL 2093838 (D. Or. May 16, 2014) ("[s]ince at least 1982 the Oregon Supreme Court has clearly stated that Oregon State Bar ethics opinions are advisory only"); *see also Slevin v. AB Hollywood, LLC*, 2025 WL 2802844, *12 (D. Or. Oct. 2, 2025); *Green Bldg. Initiative, Inc. v. Peacock*, 350 F.R.D. 289, 292 (D. Or. 2025) (OSB Formal Opinions are "not binding" but may be "persuasive" when relevant, especially in regard to determining what conduct warrants sanctions or constitutes an abuse of the discovery process).

And the record before the Court is at odds with plaintiff's contention that the successful service on Nexstar equates to service on Waage and Keeler. That is, Nexstar's counsel repeatedly informed plaintiff they did not represent Keeler and Waage, and could not accept service on their behalf. Suppl. Barrett Decl. Exs. 3-5 (doc. 22). Plaintiff's counsel apparently understood that Nexstar's counsel did not represent any other defendant at the time of service, insofar as she stated on October 2, 2025: "Please advise by Monday as to whether you are authorized to accept service on behalf of the other defendants, or we will serve them directly." Suppl. Barrett Decl. Ex. 6, at 1

Page 6 – FINDINGS AND RECOMMENDATION

(doc. 22-4); *see also* Suppl. Barrett Decl. Ex. 8, at 1 (doc. 22-6) (Nexstar's counsel indicating on October 15, 2025, that "Ogletree has now been engaged to represent Mr. Keeler and Mr. Waage . . . What are your intentions with respect to defendant KOIN-TV? I don't represent them and do not think they are a proper party"); Suppl. Keeler Decl. ¶¶ 2-4 & Exs. 1-2 (doc. 24); Suppl. Waage Decl. ¶¶ 2-4 & Exs. 1-2 (doc. 25) (Keeler and Waage "had not been provided or reviewed a summons or a copy of the complaint" until October 11, 2025).

Plaintiff further argues that Waage and Keeler were successfully served on October 3, 2025, because on that date they each signed a declaration in support of removal, showing they were aware of the action against them. Plaintiff here relies in *Beecher v. Wallace*, 381 F.2d 372, 373 (9th Cir. 1967), to establish that "reasonable" or "actual" notice of the proceeding was achieved. Pl.'s Mot. Remand 5-7 (doc. 11). Plaintiff additionally relies on Or. R. Civ. P. 7 D(1), which states: "Summons shall be served . . . in any manner reasonably calculated, under all the circumstances, to apprise the defendant of the existence and pendency of the action." *Id.* Plaintiff likewise relies on Or. R. Civ. P. 7(G), which specifies that the validity of service is not affected if a court determines "the defendant received actual notice of the substance and pendency of the action." *Id.*

Contrary to plaintiff's assertion, the fact that Waage and Keeler were aware of the existence and pendency of this action when they signed their declarations is not enough to establish that service was successfully achieved under an "actual notice" theory. Critically, in instances where "reasonable notice" existed, service documents were actually created and attempts at service affirmatively carried out. *Compare Lake Oswego Rev., Inc. v. Steinkamp*, 298 Or. 607, 614, 695 P.2d 565 (1985) ("adequate notice" standard was met even though the method of service was not listed in Or. R. Civ. P. 7 because the service documents existed, and were delivered, received, and

signed by the defendant), *with Baker v. Foy*, 310 Or. 221, 230, 797 P.2d 349 (1990) ("[d]efendant's happenstance reading of the complaint that had been left with his mother while he was making a fortuitous visit to her home [was] not service in 'a manner reasonably calculated' by plaintiff or plaintiff's attorney to apprise defendant of the existence and pendency of the action against him," such that is did not satisfy Or. R. Civ. P. 7).

Here, there is no indication that service documents were prepared or attempts at service made in regard to Waage and Keeler prior to removal.[1] As such, plaintiff's October 3, 2025, service on Nexstar was not sufficient to effectuate service on the remaining defendants.

## II.    Snap Removal

"[S]nap removal [is] a litigation tactic that relies on the 'joined and served' language of 28 U.S.C. § 1441(b)(2) to circumvent the application of the forum defendant rule." *McAboy v. Intel Corp.*, 2022 WL 1519081, *2 (D. Or. May 13, 2022). "Specifically, snap removal refers to a diverse defendant removing a case after a suit is filed in state court, but before the in-state or 'forum' defendant is served." *Id.* "When removal is proper at that time, subsequent events, at least those that do not destroy original subject-matter jurisdiction, do not require remand" because "[t]he forum defendant rule is procedural, not jurisdictional." *Caden v. Polaris Indus. Inc.*, 2023 WL 6004228, *2 (D. Or. Aug. 15), *adopted by* 2023 WL 7017837 (D. Or. Sept. 14, 2023) (citations and internal quotations omitted).

Because, as addressed in Section I(B), only defendant Nexstar had been served as of the date of removal, the use of snap removal was proper and not in violation of the "forum defendant

---

[1] By the same logic, plaintiff's additional theory of "actual notice" – i.e., that Waage and Keeler "knew of the substance of the complaint" because they were each mailed copies of the Oregon Bureau of Labor and Industries filing she lodged in September 2024 – fails. Pl.'s Mot. Remand 6 (doc. 11).

Page 8 – FINDINGS AND RECOMMENDATION

rule." *See, e.g.*, *id.* at \*2-5; *Sohal v. Mondelez Glob. LLC*, 2022 WL 6233833, \*1-2 (D. Or. Sept. 6, 2022). Plaintiff's motion is denied as to this issue.

### III.   Fraudulent Joinder

Fraudulent joinder occurs when a plaintiff fails to establish a cause of action against a named defendant. *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018). The record before the Court evinces that Keeler and Waage were "employed by Nexstar" at all relevant times. Suppl. Keeler Decl. ¶ 5 (doc. 24); Suppl. Waage Decl. ¶ 5 (doc. 25). Likewise, despite plaintiff's assertions to the contrary, the complaint suggests that she was employed by Nexstar, as opposed to any local broadcasting station. *See, e.g.*, Compl. ¶¶ 4-5 (doc. 1-1). And, as discussed in Section I(A), KOIN-TV is an entirely separate entity from Nexstar. *See* Def.'s Resp. to Mot. Remand 26 (doc. 20) (KOIN-TV is an "inactive entity [that] has no relevant connection to any of the parties or events and is properly disregarded for purposes of evaluating diversity jurisdiction"). Plaintiff thus failed to establish a cause of action against KOIN-TV.

### RECOMMENDATION

Plaintiff's Motion for Remand (doc. 11) should be denied. Plaintiff's requests for oral argument are denied as unnecessary.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's

Page 9 – FINDINGS AND RECOMMENDATION

right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 30th day of March, 2026.

_____
/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge