UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

CECELIA QUILLIN,

Plaintiff,

v.

NEXSTAR BROADCASTING, INC., fka NEXSTAR MEDIA, INC., a Delaware corporation; THOMAS KEELER, an individual; and CASEY WAAGE, an individual,

Defendants.

3:25-cv-01810-JR

FINDINGS AND RECOMMENDATION

Russo, Magistrate Judge:

Plaintiff Cecelia Quillin ("plaintiff") brings this action against defendants Nexstar Broadcasting, Inc. ("Nexstar"); Nexstar Vice President and General Manager, Thomas Keeler ("Keeler"); and Nexstar Director of Sales, Casey Waage ("Waage"), (collectively "defendants").[1]

[1] Plaintiff's complaint also names KOIN-TV as a defendant. The parties have since agreed that KOIN-TV should be removed from the lawsuit. Defs.' Mot. 5 (doc. 37); Pl.'s Resp. in Opposition 6 (doc. 39). Thus, while plaintiff refers to "Nexstar/KOIN" in her allegations, the Court addresses only Nexstar.

Plaintiff asserts claims for discrimination, hostile work environment, retaliation, and unpaid wages, stemming from her employment with and subsequent dismissal from Nexstar. Defendants now move to dismiss plaintiff's complaint with prejudice for violation of Fed. R. Civ. P. 8, Fed. R. Civ. P. 12(b)(6), and/or Fed. R. Civ. P. 12(c). Because the Court agrees that plaintiff's complaint violates the pleading standards in Rule 8, defendants' motion is granted and plaintiff's complaint is dismissed. However, because it is not clear that plaintiff's complaint could not be cured through amendment, the complaint is dismissed without prejudice and with leave to amend.

## BACKGROUND

The facts related here are taken from plaintiff's complaint. In July 2016, Nexstar hired plaintiff "as a Digital Account Executive at its Grand Rapids, Michigan subsidiary." Compl. ¶ 4 (doc. 1-1). In May 2019, plaintiff relocated to Portland, Oregon, and continued working for Nexstar as a Digital Account Executive. *Id.* ¶ 5.

At a work function in or around October 2022, plaintiff's direct supervisor, Jim Doyle ("Doyle"), called plaintiff "special needs" in front of two or more coworkers. *Id.* ¶ 7. Plaintiff "understood this to be a condescending descriptor based on her gender, based on her attention deficit disorder (ADHD) diagnosis, and based on Mr. Doyle perceiving her as disabled due to her 4'10" stature." *Id.* Several weeks later, when plaintiff told Doyle she felt his comments were hurtful and targeted "based on her gender and disability," Doyle warned her that if she went to HR with her concerns, he would "retaliate by reporting her to HR for having a lot of needs that were special."[2] *Id.*

[2] Although plaintiff refers to the incident with Doyle multiple times in her complaint, Doyle is not a defendant in this case.

Around December 2022, defendant Keeler promoted defendant Waage to Director of Sales, a move which caused concern for plaintiff because of Waage's "demeaning attitude toward his female coworkers." *Id.* ¶ 8. Between January and March 2023, Waage tried to move plaintiff's desk closer to where the other account executives sat in the "sales pit cubicles." *Id.* ¶ 9. Plaintiff informed Waage and Nexstar's Business Administrator, Lisa Newell ("Ms. Newell") that she was "diagnosed with ADHD and a germaphobe" and asked that "her request for social distancing be accommodated based on these disabilities." *Id.* Plaintiff was initially asked to fill out medical information forms regarding her request for accommodation, but Nexstar ultimately granted her request without requiring any medical documentation. *Id.*

Plaintiff alleges she continued to feel bullied and harassed by Waage. In March 2023, Waage changed plaintiff's immediate supervisor from Doyle to Katherine Dougherty ("Ms. Dougherty") "without giving [plaintiff] any advance notice or an opportunity to weigh in on the decision." *Id.* ¶ 10. According to plaintiff, Waage mocked her close working relationship with Doyle, implying their relationship was unprofessional or romantic "based on their respective genders." *Id.* ¶ 10.

In March 2023, plaintiff reported Waage's "constant harassment, bullying, condescending attitude and belittling tone" to Ms. Newell. *Id.* ¶ 12. In April 2023, plaintiff received her performance review for 2022, which "contained blatantly false claims" in retaliation for plaintiff's "protected whistleblowing activity." *Id.* ¶ 13. According to plaintiff, her reviews from every year before 2022 were positive and included regular increases in compensation. *Id.* ¶ 6. Plaintiff asked for documentation to support the negative performance review, but that request went unanswered. *Id.* ¶ 14. Plaintiff later learned that her performance review had been "heavily influenced" by Waage. *Id.*

In May 2023, defendant Keeler called plaintiff into his office, purportedly to discuss a client account. *Id.* ¶ 15. According to plaintiff, once she was alone with Keeler, he showed her a pornographic video playing on his phone. *Id.* Keeler "did not apologize, explain or otherwise address this in any way." *Id.* Plaintiff "disclosed the incident to a number of close friends, family and colleagues," but never reported the incident to HR "due to the embarrassing nature of the encounter and her fear of further retaliation." *Id.*

In June or July 2023, plaintiff raised concerns to Nexstar that a competitor the company had been asked to work with "was a con artist, operated a multi-level marketing scam business, and had a reputation for being sexist to women." *Id.* ¶ 16. Despite plaintiff's reports, Doyle volunteered Nexstar to work with the competitor, meaning plaintiff "would likely be required to work closely" with the competitor. *Id.* ¶ 17. Plaintiff immediately "went into Mr. Doyle's office, and in a normal tone asked him why he would agree to such an arrangement." *Id.* ¶ 17.

On July 25, 2023, Waage told plaintiff he was "going to write her up for questioning Mr. Doyle's decision to encourage the client to continue working with their competitor." *Id.* ¶ 18. According to plaintiff, Ms. Dougherty later shared that "she felt horrible about the effect of [Waage's] unwarranted accusations and pretextual write-up." *Id.* ¶ 19. The next day, plaintiff "emailed management, including Defendant Waage, Defendant Keeler, Mr. Doyle, Ms. Newell and Ms. Dougherty, describing how the false accusations against her were causing her extreme anxiety." *Id.* ¶ 20. Plaintiff asked Doyle, "for his support and to correct the record." *Id.* ¶ 20. The next day, plaintiff submitted a formal grievance to Nexstar "in which she reported how her managers used bullying and condescension to target her with severe and/or pervasive sexist and ableist harassment." *Id.* ¶ 21.

In January 2024, Waage changed plaintiff's compensation plan to one that included a minimum base compensation plus commission. *Id.* ¶ 34. Thereafter, Waage manually deducted commission amounts from her paychecks. *Id.* ¶ 42. Plaintiff alleges that "other similarly situated employees receiving salary and/or commission compensation, who were not women, disabled, perceived as disabled, requesting medical leave and/or whistleblowers were not targeted" by defendants. *Id.* ¶ 35.

In November 2023, plaintiff began experiencing "severe pain from a medical condition related to women's reproductive health" and received a note from her doctor that she should be allowed to work from home "approximately 7 days per month." *Id.* ¶ 32. In March 2024, plaintiff went on protected medical leave following surgery to address her reproductive health issue. *Id.* ¶ 43. When she returned from leave on April 29, 2024, plaintiff "immediately began receiving disingenuous and harassing comments" from Waage, such as, "Let's all give Cece a round of applause. She's back! Yeah, Cece! Second week back! You're killing it!" *Id.* ¶ 44. Plaintiff was told by coworkers that Waage spent more time in his office away from other staff "possibly due to [Waage] being warned about his behavior after [plaintiff's] protected whistleblowing." *Id.*

In May 2024, plaintiff received "the worst review of her career" despite having exceeded all prior years in sales revenue. *Id.* ¶ 47. Plaintiff challenged the characterizations made in the review and informed her managers that she intended to file a grievance with corporate HR for "fostering, enabling and endorsing [the] severe and/or pervasive hostile work environment." *Id.* ¶ 49. On May 20, 2024, plaintiff left a message with corporate HR requesting an update on their investigation into plaintiff's reports of unlawful employment practices. *Id.* ¶ 51. On May 21, 2024, plaintiff was terminated, without being provided a reason as to why and without being paid her remaining salary due. *Id.* ¶¶ 52-53.

On October 1, 2025, plaintiff initiated this lawsuit in Multnomah County Circuit Court against Nexstar, Keeler, and Waage, alleging employment discrimination and retaliation based on sex, age, disability status, whistleblower status, and the use of family leave. Defendants now move to dismiss plaintiff's complaint for failure to state a claim under Rule 12(b)(6), for failing to meet the pleading standard under Rule 8, and/or for judgment on the pleadings under Rule 12(c). Defs.' Mot. 5 (doc. 37).

## STANDARD OF REVIEW

### I. Failure to State a Claim Under Rule 12(b)(6)

Where the plaintiff fails "to state a claim upon which relief can be granted[,]" the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For the purposes of a motion to dismiss, the complaint is liberally construed in favor of the plaintiff, and its allegations are taken as true. *Rosen v. Walters*, 719 F.2d 1422, 1424 (9th Cir. 1983). Regardless, bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

### II. Judgment on the Pleadings Under Rule 12(c)

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for "judgment on the pleadings is properly granted when, 'taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law.'" *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883,

887 (9th Cir. 2017) (quoting *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998)). In considering a motion under Rule 12(c), courts apply the same standard of review as that of a motion to dismiss under Rule 12(b)(6). *Gregg*, 870 F.3d at 887.

**III. Pleading Standards Under Rule 8**

Rule 8 requires that every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The pleading standards under Rule 8 promote judicial efficiency so that "parties and the court can 'focus litigation on the merits of a claim.'" *Gibson v. City of Portland*, 165 F.4th 1265, 1287 (9th Cir. 2026) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002)). To that end, a district court need not accept pleadings that fail to "tie factual averments against specific parties to individual causes of action." *Id.* at 1289-90. Moreover, a district court "should not be forced to wade through a morass of allegations, trying to determine how the facts might relate to the causes of action." *Id.* at 1290. This applies, as well, when a complaint "asserts claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions.'" *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 943 (D. Or. 2020) (quoting *Nissen v. Lindquist*, No. C16-5093 BHS, 2017 WL 26843, at *2 (W.D. Wash. Jan. 3, 2017)). In such cases, Rule 8 provides a district court with a tool under which it may dismiss shotgun pleadings. *Gibson*, 165 F.4th at 1290. However, "when district courts identify shotgun pleadings, they should not hesitate to afford such parties one last opportunity to make themselves understood" through amendment. *Id.*

## DISCUSSION

Defendants argue that plaintiff's complaint is an impermissible shotgun pleading that violates the pleading standards articulated in Rule 8 and asks the Court to dismiss plaintiff's claims with prejudice. Defs.' Mot. 12, 21. The Court finds that plaintiff's complaint violates Rule 8 and dismisses plaintiff's complaint, allowing leave to amend.

### I. Shotgun Pleadings

"A shotgun pleading is one where 'a party indiscriminately incorporates assertions from one count to another, for example, by incorporating all facts or defenses from all previous counts into each successive count. . . prevent[ing] the opposing party from reasonably being able to prepare a response or simply mak[ing] the burden of doing so more difficult.'" *Gibson*, 165 F.4th at 1288 (quoting 5A *Wright & Miller's Federal Practice and Procedure* § 1326 (4th ed. 2024)). The Ninth Circuit recently recognized four main types of shotgun pleadings, including:

> (1) a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to be a combination of the entire complaint; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a complaint that fails to separate into a different count each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Id*. (quoting 35A C.J.S. Fed. Civ. Proc. § 310 (2025)).

As with the complaint in *Gibson*, plaintiff's complaint is chockfull of examples of shotgun-style pleadings. To start, each of plaintiff's thirteen claims "incorporates the foregoing allegations as if fully set forth herein," without regard for what each preceding paragraph discussed or how those paragraphs relate to each claim. *See, e.g.*, Compl. ¶¶ 61, 63, 65. 67, 69, 71, 73, 75, 77, 79, 82, 84, 86. This, coupled with the sheer volume of information packed into each paragraph, makes the complaint unwieldly and nearly impossible to analyze.

Next, the complaint is replete with vague and immaterial facts that are not obviously connected to any particular cause of action. For example, plaintiff described an incident where she reported her concerns with defendant Waage's behavior to Ms. Newell. But plaintiff never explains what role Ms. Newell plays within the company beyond that she is a "Business Administrator." Consequently, it is not clear why plaintiff reported her concerns with Waage's conduct to Ms. Newell, as opposed to an HR representative, or if Ms. Newell was obligated to take some action on plaintiff's behalf after the report. Moreover, the threads of plaintiff's grievances are markedly difficult to follow. For instance, plaintiff stated that she reported Waage's "constant harassment, bullying, condescending attitude and belittling tone" to Ms. Newell, including that

> [Waage] did not use the same attitude or tone with any of the other employees, and that she felt it was related to her short stature which she understood to qualify as a disability recognized under protections for disabled employees. In response, Ms. Newell nodded her head and rolled her eyes, which Ms. Quillin understood to communicate that she was familiar with Defendant Waage's harassment. Ms. Quillin told Ms. Newell that she had asked Defendant Waage at least five times since he became Director of Sales not to speak to her like a baby, but to respect her as a woman who was in fact in her late 30s. Ms. Quillin informed Ms. Newell she felt Mr. Waage's behavior rose to the level of harassment. Ms. Quillin also reported to Ms. Newell how Mr. Doyle had called her "special needs" in a way Ms. Quillin found to be demeaning, in targeting her age, sex and disability.

Compl. ¶ 12. Plaintiff's narrative of her conversation with Ms. Newell, while lengthy, fails to provide any connection between the factual content and her claims. If anything, it incorporates so many disjointed allegations that the reader is left wondering what point plaintiff is trying to make. "Factual allegations, however detailed, must be tied to corresponding causes of action." *Gibson*, 165 F.4th at 1293. The complaint contains many examples of this type of vague and conclusory statement which provide nothing in the way of discernable allegations. *See, e.g.,* Compl. ¶¶ 9, 10, 11, 14, 16, 17, 19, 22, 25, 33.

Plaintiff also fails to provide even "[t]hreadbare recitals of the elements of a cause of action." *Gibson*, 165 F.4th at 1292 (quoting *Iqbal*, 556 U.S. at 678)). For example, plaintiff fails to allege any of the requisite elements for her claims of hostile work environment. Compl. ¶¶ 63-66. To state a claim for hostile work environment, a plaintiff must show: "(1) that [she] was subjected to verbal or physical conduct of a [sex-based or age-based] nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Mills v. PeaceHealth*, 31 F. Supp. 3d 1099, 1115 (D. Or. 2014) (citing *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 642 (9th Cir. 2003)) (citation modified). Here, plaintiff's hostile work environment claims state only that "[d]efendants discriminated against Ms. Quillin by creating a severe and pervasive hostile work environment because of Ms. Quillin's [sex/age] in violation of ORS 659A.030(1)(b)." Compl. ¶¶ 63-66.

Another example is plaintiff's claims based on disability discrimination. To state a prima facie case for disability discrimination under Oregon law, a plaintiff must show (1) she is a qualified individual with a disability; (2) she suffered an adverse employment action; and (3) there was a causal connection between the adverse employment action and her disability. *Huitt v. Optum Health Servs.*, 216 F. Supp. 3d 1179, 1187 (D. Or. 2016). From the outset, plaintiff's claim fails because she has not established that she is disabled within the meaning of ORS 659A.104. In her complaint, plaintiff avers to being disabled based on a variety of theories, including (1) her short stature, (2) ADHD, (3) being a germaphobe, and (4) painful women's reproductive health condition. Compl. ¶¶ 7, 9, 12, 32. But except for her painful women's reproductive health

condition,[3] plaintiff has not intimated that any of her other ailments in any way limited one or more of her major life activities. *See* ORS 659A.104(a)-(c) (requiring that the physical or mental impairment must substantially limit one or more major life activities of the individual). Nor did plaintiff tie any adverse employment action to her alleged disabilities. Instead, plaintiff simply repeats in each of her disability claims that she was subjected to discriminatory or retaliatory acts based on her disability. Compl. ¶¶ 81, 83, 85. Such conclusory statements cannot stand in place for a causal connection between an adverse employment action and her alleged disability.

Finally, plaintiff fails to identify which claims pertain to which defendant, and instead simply asserts all claims against all defendants.[4] This type of pleading "undermines a fundamental purpose of Rule 8, which is to provide defendants with adequate notice of the plaintiff's claims, including the facts and the legal basis for relief." *Gibson*, 165 F.4th at 1290. And, in neglecting to plead with any degree of specificity, plaintiff invites defendants and this Court to fill in the blanks as to which defendant may be responsible for what action. *See, e.g.*, Compl. ¶¶ 62, 64, 66, 68; *see also Gibson*, 165 F.4th at 1292 (noting that when plaintiffs "abandoned their duty to identify who is responsible" they "invited Defendants, the district court, and [the Ninth Circuit] to fill in the blanks."). "It is not the job of the district courts to make sense of the pleading, to supply facts to support the claim, or to imagine the claims that might fit the facts." *Gibson*, 165 F.4th at 1289.

---

[3] On a separate note, plaintiff's painful reproductive condition appears to have resolved within six months, meaning it is not likely an impairment within the meaning of 659A.104. ORS 659A.104(1)(c)(B).

[4] The only exception is plaintiff's fifth claim for relief, which specifically alleges that defendant Nexstar owes plaintiff unpaid wages under ORS 652.140. Compl. ¶ 70. However, the fact that plaintiff named the defendant against whom the claim is alleged does not cure the claim's other pleading defects; namely, that plaintiff failed to connect the facts in her complaint to the claims at issue.

Consequently, plaintiff's complaint is dismissed as an impermissible shotgun pleading that fails to meet the pleading standards under Rule 8.

## II. Additional Defects in the Complaint

Plaintiff's complaint contains additional defects. And while most of those defects are noted under the discussion of Rule 8 pleading standards, this Court writes separately to address two that warrant a brief, separate discussion.

### A. Claims Improperly Brought Against Individual Defendants

Plaintiff improperly names individual defendants in claims that can only be brought against an employer. ORS 659A.001(4)(a) defines an employer as "any person who in this state, directly or through an agent, engages or uses the personal service of one or more employees, reserving the right to control the means by which such service is or will be performed." It follows then, that plaintiff's First, Second, Third, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth claims can only be asserted against an employer or employers, and not individual agents who are "merely exercising the power the corporate entity holds and are not acting on their own, independent, reservation of the right to control." *McClusky v. City of N. Bend*, 308 Or. App. 138, 144, 481 P.3d 431 (2020). Plaintiff has not alleged that Keeler or Waage were her employers. And nothing in the facts indicates that Keeler or Waage were anything more than agents of plaintiff's employer, Nexstar.

Plaintiff's arguments in response only further muddy the waters. At first, by arguing only that her Fourth and Thirteenth claims may be asserted against individuals, plaintiff seems to concede that the remaining ten claims at issue can only be asserted against an employer. Pl.'s Resp. in Opposition 17-18. However, plaintiff immediately pivots from this position and argues that

Keeler and Waage are proper defendants in those ten claims. In doing so, plaintiff states that defendants "misapprehend" the complaint's structure and that her

> First through Third and Sixth through Twelfth Claims identify the unlawful employment practices; the Thirteenth Claim then attaches individual liability for each of those practices under [ORS 659A.030(1)(h)],[5] which expressly includes 'any person whether an employer or an employee.' The employer-directed character of the underlying provisions does not shield the individual [d]efendants from suit, rather it defines the very practices they are alleged to have aided, abetted, and personally carried out.

Pl.'s Resp. in Opposition 18. While plaintiff is correct that claims for aiding and abetting may be brought against individuals, the rest of her argument is puzzling. Does she mean that, by asserting a claim for aiding and abetting, Keeler and Waage can then be named as co-defendants in all of the claims alleged against Nexstar? That proposition seems unlikely. In any event, it is not clear to this Court how bringing a claim for aiding and abetting transforms an employer's agent into an appropriate defendant under Oregon's employer discrimination statutes. Should plaintiff choose to amend her complaint, she must ensure that her claims are brought against the proper defendants.

**B. Plaintiff Fails to Assert a Claim for Aiding and Abetting**

Plaintiff's Thirteenth Claim for "Aiding and Abetting Discrimination/Retaliation" fails to meet the minimum pleading standards outlined in *Granewich v. Harding*, 329 Or. 47, 53–54, 985 P.2d 788 (1999). To state a claim for aiding and abetting, a plaintiff must plausibly allege that a third party (a) performed a tortious act in concert with another person or pursuant to a common design, or (b) knew that the other's conduct constituted a breach of duty and gave substantial assistance or encouragement to the other so to conduct himself, or (c) gave substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered,

---

[5] Plaintiff filed her complaint in October 2025. In November 2025, the Oregon Legislature renumbered ORS 659A.030(1). While plaintiff's complaint uses the older numbering system, the Court refers to the revised numbers.

constitutes a breach of duty to the third person. *Granewich*, 329 Or. at 53-54 (citation modified). Here, plaintiff states only that defendants "violated ORS 659A.030(1)(h) by aiding, abetting, inciting, compelling and/or coercing discrimination and retaliation against Ms. Quillin, as set forth above." Compl. ¶ 87. This is a legal conclusion and does not meet the minimum pleading standard that a civil aiding and abetting claim must meet. *Rivera v. Perlo Constr., LLC,* 336 Or. App. 307, 321-22, 561 P.3d 1144 (2024).

For the reasons stated above, the Court finds that plaintiff has failed to meet the pleading standards under Rule 8 and has failed to state a claim for relief under Rule 12(b)(6). Defendants' motion to dismiss plaintiff's complaint is granted, but without prejudice. Plaintiff may amend her complaint and cure the pleading defects identified in this recommendation. The Court also reminds plaintiff that should she elect to file an amended complaint, she must reallege each of her claims, including the specific facts underlying each claim, and may not incorporate any part of her prior pleadings by reference. *See* LR 15-1(a)(3).

**RECOMMENDATION**

For the foregoing reasons, defendants' motion to dismiss (doc. 37) should be granted, and plaintiff allowed to file an amended complaint. Any amended complaint should be filed within thirty days of the District Judge's final order.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections

to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 15th day of October, 2026.

/s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge